Díaz Caneja v. The Administration.

Appeal from the District Court of San Juan.

No. 43.—Decided June 29, 1906.

Appeal—Evidence—Bill of Exceptions—Statement of Facts.—In order that the Supreme Court may consider on appeal the evidence taken in at the trial, it is necessary that the same be set forth in a bill of exceptions or a statement of facts.

Id.—Evidence.—It will be presumed that the findings of the court below upon the evidence taken at the trial are correct in the absence of a showing to the contrary.

Id.—Grounds upon Which Judgment Appealed From is Based.—Even where the reasons or grounds upon which a judge based his judgment are not in accordance with law, this would not be a sufficient reason to reverse such judgment if other facts are shown on the trial to warrant the same.

The facts are stated in the opinion.

*Mr. Morera Martínez* for appellant.

*Mr. Rossy, fiscal,* for respondent.

Mr. Justice Hernández delivered the opinion of the court.

On December 20, 1900, Manuel Díaz Caneja filed a complaint on appeal in the District Court of San Juan from a final decision of the Administration rendered in proceedings concerning the survey of a number of lots situated in the *barrio* of La Marina of this city in the section called La Carbonera, alleging the following facts:

"1. That he is the owner of lot No. 14, without its extension, situated in the *barrio* and district mentioned, the boundaries of which lot he states but not the area.

"2. That he acquired said lot, upon which a masonry building was subsequently erected, from Eduardo González Caneja, who acquired it from Francisco Fernández Pasalagua, who acquired it from Guillermo Newman, who acquired it from the State for the sum of 3,785 *pesetas* at a public sale held in the year 1875.

"3. That in the schedule of conditions relating to said sale no provision was made in the event that there should be a difference in the area upon giving possession to the successful bidder, the price of the lot in question having been fixed at the rate of 10 Spanish *pesetas* for each square meter.

"4. That in the decision contested, which directs the plaintiff to pay the Administration 315.43 *pesos* of the provincial money then in circulation, on account of a difference in the area of the lot, at the rate of 8 provincial *pesos* per meter, the Administration took as a basis in fixing the rights and obligations of the parties, the schedule of conditions of another public sale of lots which took place in the year 1897.''

The following conclusions of law were deduced from the facts alleged:

1. That the contract of purchase and sale at public auction, entered into in the year 1875 between the Treasury and Guillermo Newman, is governed by the schedule of conditions prepared for said sale, and by legislation relating to contracts as to anything not therein provided for; but never by the schedule of conditions which governed the sale in the year 1897.

2. That no provision having been made in the schedule of conditions of the sale of 1875 for any difference in the area

of the lot sold, such difference under the laws formerly in force, and article 1479 of the former Civil Code, gives rise, when the price fixed is by unit of measure, to an increase or reduction thereof, in accordance with the rate fixed for each unit; the right to claim such increase or reduction in price by the vendor as well as by the purchaser, prescribing by the lapse of time which article 1472 of the said Code fixes at six months, and the laws of the Partidas and of Toro, at one year.

3. That in the event that such prescription should not exist, the amount reimbursable should have been fixed at the rate of 2 Spanish *pesos* per square meter; which was the rate established at the sale of 1875, and not at the rate of 8 provincial *pesos* prescribed for that of 1897.

The plaintiff prayed that upon the grounds of fact and law alleged, after the proper legal proceedings, judgment be rendered reversing the decision appealed from, at least in so far as it directs the payment to the Treasury by Manuel Díaz Caneja of the sum of 315.43 *pesos,* provincial currency formerly in circulation.

The *fiscal,* in answering the complaint on behalf of the Administration, prayed for its dismissal, and that the administrative resolution be affirmed as to the point in controversy, alleging to this end:

"1. That on October 21, 1874, the Administration of the Treasury of this Island sold at public auction 14 lots belonging to it and located in the *barrio* of La Marina of this capital, in the so-called Carbonera district, including lot No. 14, which was given an area of 278.33 square meters and a value of 2,783.33 *pesetas,* at the rate of 10 *pesetas* per meter; which lot was awarded to Guillermo Newman for the sum of 3,785 *pesetas.*

"2. After the sale a ground plan of the lot was again made, and as it appeared to have an area of 248.43 square meters, possession thereof was given to the purchaser Newman on January 19, 1876.

"3. That with the lapse of time the successive owners of lot No. 14, occupied and enclosed for their exclusive use the lands which the sea left dry in its gradual withdrawal, to the point of Atanasio Vargas, in whose name lot No. 14 appeared, occupying in 1895 an area.

of 637.19 square meters, in addition to the 278.33 which had been sold to Newman; and on account thereof a demand was made upon him for the sum of 693.28 *pesos* as lease for the years of improper occupation which had elapsed.

"4. That on December 19, 1885, Manuel Díaz Caneja, calling himself the owner of lot No. 14, presented a petition alleging reasons tending to evade the payment of the lease price demanded for the additional land occupied, and on April 20, 1886, he confessed that he occupied an area of 295 meters in addition to the land which had been sold to him, and that the remainder of the drained lands was devoted to the public service.

"5. That after a number of negotiations both on the part of Díaz Caneja as on the part of the other purchasers of the lots in the Carbonera district, who had also been utilizing lands of the State, the Administration decided to lease to them in consideration of a stipulated annual sum the lands reclaimed from the sea which they improperly occupied, waiving the recovery of the amount claimed by reason of the previous occupation.

"6. That by virtue of this decision, on December 20, 1886, the survey and occupation by the State was proceeded with, Díaz Caneja being present, of the lands reclaimed from the sea, the area of lot No. 14, comprising 278.33 square meters, being fixed, and the dimensions of the land situated to the south of said lot, which was also fixed and found to have an area of 419 square meters in the part occupied by Caneja, and 178.24 square meters in the part open to public service.

"7. That upon Díaz Caneja coming into possession of lot No. 14 and its extension to the south, of the former as owner and of the latter as lessee, he proceeded to erect a masonry building without confining himself to the dimensions and structure of the lot of which he was the owner, extending the building to a part of the land leased—that is to say, to the extension of said lot to the south, and also to part of the land situated to the north of the lot and which was to be used as a street.

"8. That in 1894 the Administration resolved to sell at public auction the extension of the Carbonera lots—that is to say, the lands reclaimed from the sea which had been the subject of the lease—together with other lands obtained by the extension of the wharf to the east; and for the purpose of making this sale the land in question was surveyed and divided into lots, the extension of lot No. 14 showing an area of 444.39 square meters, which was purchased at public auction on December 20, 1897, by Eduardo González Caneja for the sum of 3,475 *pesos*.

"9. That on August 28, 1898, González Caneja requested that his lot should be surveyed in order to erect a building thereon, and in this connection the Director of Public Works made a new survey and ground plan of the land sold, when it was ascertained that the land sold to González Caneja lacked 39.80 meters, which Díaz Caneja was occupying by the building erected on lot No. 14, 331.67 square meters, making a difference of 53.44 meters (this should be 53.34 meters) in excess of the 278.33 meters which had been purchased by Guillermo Newman in 1875.

"10. That the Administration, finding it necessary to accept as proper the alignment of the streets surrounding the lots and leaving undisturbed the permanent buildings already erected, some of them, like that of Díaz Caneja, beyond its own land, approved a new survey of lots, establishing as a basis thereof that the owners having a larger area than that sold them should pay for the difference at the rate of sale at the last auction; and that, on the other hand, those who, like González Caneja, should have less land than that sold, should be reimbursed at the same rate of sale, with a reduction of 5 per cent from each, according to the construction by the Administration of the twelfth clause of the schedule of conditions which served as a basis for the last sale."

The *fiscal* alleged as grounds of law what he deemed pertinent seeking the dismissal of the complaint.

In the said month of December, 1900, Eduardo González Caneja brought another action in the said District Court of San Juan appealing from the final decision of the Administration in the proceedings relating to the survey of a number of lots situated in the *barrio* of La Marina of this city in the so-called Carbonera district, alleging the following facts in his complaint:

"1. That in the year 1897, in proceedings instituted by the central administration of taxes and revenues of this Island, he acquired at public sale the extension or surplus of lot No. 14 situated in the said *barrio* and district, which surplus consisted of a tract of land containing 434.39 square meters, bounded on the north by lot No. 14 belonging to Manuel Díaz Caneja; on the south by the wharf; on the east by the public street; and on the west by the prolongation or extension of lot No. 13.

"2. That by the eleventh clause of the schedule of conditions governing said sale, it was provided that 'if at the time the purchaser takes possession any difference should be noted in the area of the land sold from that announced, neither the latter nor the Treasury shall have the right to make any claim whatsoever if such difference should not reach 5 per cent of the total area under which it was sold.'

"3. That in the proceedings instituted for the survey of said lots, the Military Government rendered a decision by virtue of which the tract of land or lot purchased by the plaintiff was reduced to 394.5625 square meters, thus suffering a loss of reduction of 39.8275 square meters; and the boundaries of the lot were modified, the boundary with the wharf on the south and part of that on the east with the public street being lost, which boundaries, especially that with the wharf, gave it greater value and importance.

"4. That the rate which served as a basis for the sale was 8 *pesos* per square meter, and in the decision contested it is only ordered that the value of 18.1080 square meters be restored to him when the reduction in the size of his lot is 39.8275 square meters, and, therefore, he is not reimbursed for 21.7195 meters; and for the loss and damage suffered on account of the irregularity that such reduction causes in the lot and the loss of the boundary with the wharf and with part of the street, which loss and damage he estimated at 900 *pesos*."

Upon these allegations of fact and the grounds of law which he deemed pertinent, González Caneja prayed that, after the proper legal proceedings, judgment should be rendered reversing the decision contested relating to the survey of the lots, and that things revert to the state in which they were formerly, or that said decision be left in force and effect; and that it be held that the Treasury should reimburse him in the sum of $191.17, which is the equivalent, at the rate of 8 provincial *pesos*, of the 39.8275 square meters by which his lot is reduced, plus 900 *pesos* at which he estimates the loss and damage suffered.

The *fiscal* made answer to the foregoing complaint contesting it and praying that judgment be rendered in favor of the Administration; and that the decision of the Military Governor of this Island of March 18, 1900, relating to the

correction of the survey of the lots situated in the Carbonera district of this city, be affirmed.

·· The complaints of Manuel Díaz Caneja and Eduardo González Caneja were consolidated in compliance with an order of the District Court of San Juan of August 11, 1904, for the reason that Díaz Caneja had acquired the lot of González Caneja by sale; consequently, the plaintiff and the defendant, being one and the same person and the causes of action of like nature, and the trial having been held in accordance with the Code of Civil Procedure now in force, said court rendered judgment on January 4 of last year reading as follows:

"On November 25, 1904, in open court, these consolidated actions were called for trial, the plaintiff appearing in person and through his counsel, and the defendant through his counsel, the *fiscal* of this district court, and they announced that.they were ready to proceed. The plaintiff made his allegations and was followed by the defendant. The plaintiff presented his evidence which was heard, the same being done with respect to that of the defendant, and finally, both parties made their respective oral arguments, the trial having been continued at the sessions of November 28 and 29, when it terminated; and the court having heard the pleadings, the evidence and the arguments, is of the opinion that the facts and the law are partly in favor of the plaintiff and partly in favor of the defendant; and, therefore, renders judgment in the following form: As it appears that in lot No. 14 the plaintiff has an excess of 53.3450 meters, and in the prolongation of lot No. 14 said plaintiff has 39.8275 meters less, and the difference and excess being included within the 5 per cent to which the twelfth basis of the schedule of conditions governing the sale of the extension of lot No. 14 refers, the plaintiff is not entitled to recover anything from the defendant on account of a lack of area, nor is the defendant entitled to recover from the plaintiff on account of an excess in area. And as it further appears that the plaintiff has not been caused any loss or damage by the decision appealed from, it is also held that the plaintiff recover nothing from the defendant for loss and damage; and it is ordered that this judgment, rendered without any special taxation of costs, be entered in the book of judgments of this court. Pronounced in open court this 4th day of January, 1905. Entered this 4th day of January, 1905.—Emilio del Toro, judge. Attest: José E. Figueras, clerk."

Counsel for Manuel Díaz Caneja took an appeal from this judgment, which is now awaiting the decision of this Supreme Court, both parties having presented their briefs and oral arguments in support of their respective contentions.

The transcript of the record transmitted to this Supreme Court does not contain any bill of exceptions or statement of facts, from which we may ascertain the result of the evidence heard at the trial, which is a necessary requisite, as we have held a number of times, to permit us in an authentic manner, to acertain the facts which have served as a basis for the action of the lower court in the application of the law; and, in the absence of such statement of facts, required by section 214 of the Code of Civil Procedure, to permit us to question the finding of the judge that the facts are in favor of either of the parties, it is to be assumed that such finding was fair and just.

In this case, as the parties have not agreed upon all the facts which have served as a basis for the judicial controversy, it is not possible for us to consider the judgment in relation solely with the complaint and answer in order to determine whether the law has or has not been violated in the judgment appealed from. Nor is it permissible to consider by itself the fact which the judge sets forth as the ground of his judgment because on the assumption, which we do not discuss, that such fact did not bear out his decision, other facts may have been shown at the trial, unknown to us, in justification thereof.

The certified copy of the evidence submitted to us, which counsel for the appellant certifies agrees with the originals, cannot supply the lack of a statement of facts, because the rules of procedure established by law cannot be changed at the will of the litigants.

Under these circumstances the judgment appealed from should be affirmed, with the costs of the appeal against the appellant.

*Affirmed.*

Chief Justice Quiñones, and Justices Figueras, MacLeary and Wolf concurred.